**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**

TWIN CITY FIRE INSURANCE COMPANY,
a foreign corporation,

      Plaintiff,

v.

CR TECHNOLOGIES, INC.
a Florida corporation,

      Defendant/Third-party Plaintiff,

v.

HARTFORD FIRE INSURANCE
COMPANY,
a foreign corporation,

      Third-party Defendant.

_____/

CASE NO: 9:13-cv-80998-RLR
**<u>DISPOSITIVE MOTION</u>**

**<u>TWIN CITY FIRE INSURANCE COMPANY'S AND HARTFORD FIRE
INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW</u>**

TWIN CITY FIRE INSURANCE COMPANY ("Twin City") and Hartford Fire Insurance

Company ("Hartford Fire"), under Fed.R.Civ.P. 56 and S.D. Fla. L.R. 56.1, move for final

summary judgment against CR TECHNOLOGIES, INC. ("CRT"), and state:

**<u>INTRODUCTION</u>**

At issue in this coverage action is the unremarkable proposition that a ***Final Judgment***

for ***Civil Theft***, which included specific findings that the theft was committed with ***criminal***

***intent*** and even involved ***unconscionable and immoral conduct***—is not covered under two

liability insurance policies, one D&O policy and one GL policy.  Under New York law, under

Florida law, and under law across the nation, there is never insurance coverage available for

committing actual theft.  Indeed, the Court need look no further than *CNL Hotels & Resorts,*

*Inc. v. Twin City Fire Ins. Co.,* 291 Fed. App. 220 (11th Cir. 2008), where the Eleventh Circuit sharply ruled that restitution and disgorgement for "ill-gotten gains" are not covered under a Twin City policy.  Here, the application of that rationale is even more compelling because Datanet and CLEC were found to have committed actual civil theft, with criminal intent.

Under the D&O insurance policy, Twin City owes no coverage for the Final Judgment as a matter of law.  Not only is civil theft not a "loss" under the insuring agreement of Coverage C, but specific exclusions (criminal act or willful violation, gain of profit or advantage, and breach of contract) also clearly bar coverage.  Further, not surprisingly, the Crime Coverage part of the Policy provides coverage only for theft <u>from</u> an insured, not theft <u>by</u> an insured.  As a matter of law, Twin City owes no coverage and is entitled to final summary judgment.

Under the Hartford Fire GL policy, the civil theft judgment does not satisfy the insuring agreement; civil theft is not "property damage" caused by an "occurrence," since one of the elements is felonious ***intent*** to steal.  Additionally, the expected or intended injury exclusion bars coverage, as does the care, custody, or control exclusion.  Consequently, Hartford Fire is also entitled to final summary judgment as a matter of law.

Not only is there no coverage under the terms of the policies, but public policy also sensibly prohibits coverage for civil theft committed with criminal intent.  Given the recent headlines, the Court can only imagine the moral hazard in New York and Florida if based on a ruling in this action there was suddenly coverage available for corporate theft.  As a matter of law, there is not and should not be coverage available for the Civil Theft Final Judgment.[1]

---

[1]  It is important to note that the sole issue in this action is whether Twin City and Hartford Fire must pay the Final Judgment for theft by their insureds.  The duty to defend is not at issue. Also, the material summarized in the statement of facts (DE 84.) and corresponding compendium of exhibits (DE 83.) fully inform the Court's inquiry.  For ease of reference, all citations to the record in this motion correspond to the Statement.

## ARGUMENT AND CITATION OF AUTHORITY

**Summary Judgment is Appropriate**

"Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Maryland Cas. Co. v. Fla. Atl. Orthopedics*, 771 F. Supp. 2d 1328, 1331-32 (S.D. Fla. 2011) *aff'd,* 469 Fed. Appx. 722 (11th Cir. 2012). Because this case involves basic policy language applied to a Final Judgment, this action can be resolved as a matter of law.

**No Choice of Law Inquiry is Necessary**

A district court exercising diversity jurisdiction generally applies the law of the forum state, including its choice of law rules. *Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). If the outcome is the same in both states, there is a "false conflict" and the court "should avoid the choice-of-law question." *Geraerts v. TD Bank, N.A.,* No. 1:14-cv-20744, 2014 WL 5493183, at *2 (S.D. Fla. Oct. 31, 2014) ("No conflict of law exists when the asserted conflict is a false conflict.").

Here, the Twin City Policy and the Hartford Fire GL Policy were issued and delivered to Datanet in New York but, it is inconsequential because there is no conflict. New York and Florida law equally hold that the terms of an insurance contract are simply applied as written. *James River Ins. Co. v. Med Waste Mgmt.*, LLC, No. 1:13-CV-23608-KMM, 2014 WL 4749551, at *4 (S.D. Fla. Sept. 22, 2014) (no conflict between New York and Florida; as a matter of law there simply was no coverage for a final judgment under the plain language of the policy).

**Insurance Contracts Must be Applied as Written**

In New York and Florida, the bedrock principle of insurance law is that insurance contracts are construed according to their plain meaning. *See, e.g., Lavant v. Gen. Acc. Ins Co.,*

595 N.E. 2d 819, 822 (N.Y. 1992); *Catlin Specialty Ins. Co. v. QA3 Fin. Corp.,* No. 10cv8844, 2010 WL 2990520 (S.D.N.Y. July 2, 2014); *Garcia v. Federal Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) ("insurance contracts are construed according to their plain meaning.").   Where language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the language is given its plain meaning. *Jefferson Ins. Co. of N.Y. v. Sea World of Fla.,* 586 So. 2d 95, 97 (Fla. 5th DCA 1991).   In applying this rule, it is improper for "courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003); *Taurus Holdings, Inc. v. U.S. Fid.*, 913 So. 2d 528, 532 (Fla. 2005) ("if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision.").   A provision "is not ambiguous merely because it requires analysis to interpret it. *Id.*; *Garcia*, 969 So. 2d at 291.   Last, "[i]n insurance disputes like this one, the court may consider the case law of other jurisdictions that have examined similar policy provisions if there are no precedents from Florida's intermediate appellate courts or the Florida Supreme court." *Bond Safeguard Ins. v. Nat'l Union Fire,* No. 6:13-cv-561-Orl-37, 2014 WL 5325728, at *5 (M.D. Fla. Oct. 20, 2014).

**Duty to Indemnify Standard**

The duty to indemnify is a narrow inquiry.   It is determined by the underlying facts developed at trial or through discovery during litigation. *Id.* (citing *Stephens v. Mid-Continent Cas. Co.,* 749 F.3d 1318, 1321 (11th Cir. 2014)).   Here, as is evident from the Final Judgment, Twin City has no duty to indemnify for a number of reasons.   Civil theft is not a "loss" because it is uninsurable under the law.   Civil theft is also barred by several exclusions.   Similarly, Hartford Fire has no duty to indemnify because there was no "property damage" caused by an

"occurrence."   Additionally, Datanet and CLEC were found directly liable for committing civil theft and coverage is barred by several exclusions.

## THE ELEMENTS OF CIVIL THEFT INCLUDE CRIMINAL INTENT

Under Florida law, a prerequisite for proving civil theft under Fla. Stat. §772.11 is that the defendant acted with *felonious intent to steal. See, e.g., Gersh v. Cofman,* 769 So. 2d 407, 409 (Fla. 4th DCA 2000) ("In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as *criminal intent*."); *Heldenmuth v. Groll,* 128 So. 2d 895, 896 (Fla. 4th DCA 2013) ("To establish claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with *criminal intent*."); *Duncan v. Kasim, Inc.,* 810 So. 2d 968, 970 (Fla. 5th DCA 2002) (civil theft claim may be based on allegations of embezzlement or misappropriation of plaintiff's property); *Merritt v. OLMHP, LLC,* 112 So. 2d 559, 561 (Fla. 2d DCA 2013) (holding that *felonious intent* is an essential element of civil theft).   Indeed, if the property that was stolen is the subject of a contract between the parties, civil theft requires proof of an intricate, sophisticated scheme of deceit **and theft**. *Trend Setter Villas of Deer Creek v. Villas on Green,* 569 So. 2d 766, 767 (Fla. 4th DCA 1990). It is accordingly impossible to prevail on civil theft under Florida law without proving the scienter of felonious criminal intent to steal.   Here, the jury even specifically found that Datanet and CLEC stole CRT's computer systems in New York with *criminal intent*.   As a matter of law, there is no coverage.

## ONLY THE DUTY TO INDEMNIFY IS AT ISSUE

Any duty to defend is <u>not</u> at issue in this case.   Both Datanet and CLEC were provided a defense in the Underlying Action by Twin City.  Also, in this action, it is important to note that Datanet and CLEC are not litigants and have no arguments against Twin City or Hartford Fire.

CRT alone seeks coverage to satisfy its judgment.  The undisputed facts establish that Twin City

and Hartford Fire have no obligation to pay CRT's Civil Theft Final Judgment.

I.      **CIVIL THEFT COMMITTED WITH CRIMINAL INTENT IS NOT A FORTUITOUS "LOSS," CONSEQUENTLY, THE FINAL JUDGMENT IS NOT INSURED UNDER COVERAGE C OF THE TWIN CITY D&O POLICY**

The operative facts here are undisputed.  In the Underlying Action, the jury instruction

for civil theft required a finding that Datanet and CLEC obtained or used CRT's property **with**

**criminal intent**. (*Jury Instructions*, Ex. E, pg. 41.)  The jury made that exact finding in their

verdict. (*Jury Verdict*, Ex. F, pg. 2, ¶5, pg. 4, ¶12.)  The Final Judgment is also clear that it is

based on Datanet's and CLEC's "civil theft" of CRT's systems. (*Final Judgment*, Ex. A, pg. 2

¶1-2.)  Because of that civil theft, the Final Judgment requires Datanet and CLEC to provide

*restitution* to CRT for stealing CRT's systems.[2]

Coverage C of the Twin City Policy requires Twin City to pay "loss" on behalf of

Datanet and CLEC for a "wrongful act," subject to certain exclusions. (*Twin City Policy,* Ex. H*,*

Form PE 00 H013 00 0502, pg. 1/7.)  The Twin City Policy defines "loss" to include

compensatory damages, but not "matters that may be deemed uninsurable under the law…."

(*Id.,* pg. 3/7.)

Under D&O policies, the term "loss" requires that the insured corporation suffer a

fortuitous financial detriment of some kind, not to be rewarded for stealing. *Safeway Stores,*

*Inc. v. Nat'l Union Fire Ins. Co.,* 64 F.3d 1282, 1286 n.8 (9th Cir. 1995).  Sensibly applying

this common sense principle, courts across the nation have summarily held that where an insured

is required to pay restitution or disgorgement for wrongfully taking property or money,

---

[2] "Unlike civil damages, restitution is a criminal sanction.  The purpose of restitution is not only to compensate the victim, but also to serve the rehabilitative, deterrent, and retributive goals of the criminal justice system." *Spivey v. State,* 531 So. 2d 965, 967 (Fla. 1988); *accord State v. Hawthorne,* 573 So. 2d 330, 333 (Fla. 1991).

that obligation cannot constitute an insurable "loss."  To be sure, the amount of authority is astounding. *See, e.g., Level 3 Commc'n, Inc. v. Fed. Ins. Co.,* 272 F.3d 908, 910 (7th Cir. 2001) ("The interpretive principle for which Federal contends that a 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain-is clearly right."); *CNL Hotels & Resorts, Inc.,* 291 Fed. App. at 223 (applying Florida law and holding no coverage for restitutionary payment to settle claim for the return of ill-gotten gains); *Town of Bookhaven v. CNA Ins. Co.,* No. CV-86-3569, 1998 WL 23555 at *3-5 (E.D.N.Y. Feb. 24, 1998) (no coverage - town required to disburse wrongfully withheld funds to school districts suffered no "recoverable loss" because "the town was never entitled to use those funds."); *Reliance Group Holdings, Inc. v. Nat'l Union Fire Ins. Co.,* 954 N.Y. 2d 20, 24 (N.Y. App. Div. 1993) (no coverage - restitution of a portion of greenmail profits was not a "loss" within the meaning of that term); *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.,* 10 A.D. 3d 528, 528 (N.Y. App. Div. 2004) (no coverage - "[t]he risk of being directed to return improperly acquired funds is not insurable."); *Nortex Oil & Gas Corp. v. Harbor Ins. Co.,* 456 S.W. 2d 489, 494 (Tex. App. 1970) (no coverage - "[a]n insured … does not sustain a covered loss by restoring to its rightful owners that which the insured, having no rights thereto, has inadvertently acquired."); *Granite State Ins. Co. v. Aamco Transmissions, Inc.,* 57 F.3d 316, 320 (3d Cir. 1995) (no coverage - "[w]e also point out that if unfair competition includes coverage for a claim by a customer against an insured, the insured would simply shift the loss to its insurer and, in effect, retain the proceeds of its unlawful conduct."); *Ryerson Inc. v. Fed. Ins. Co.,* 676 F.3d 610, 612 (7th Cir. 2012) (no coverage - "[i]f disgorging such proceeds is included within the policy's definition of "loss," thieves could buy insurance against having to return money they stole. No one writes such insurance."); *Bank v. Chartis Specialty Ins. Co.,* No. 1:12-CV-4259-RWS, 2013 WL 4039414, at

*3 (N.D. Ga. Aug. 7, 2013) (no coverage - settlement of lawsuit alleging usurious overdraft fees charged by insured to customers was ill-gotten gain, not insurable); *John M. O'Quinn P.C., etc. v. Nat'l Union Fire Ins.,* No. 4:00-cv-2616, 2014 WL 3543709, at * (S.D. Tex. July 17, 2014) (no coverage - arbitration award requiring forfeiture of $25,000,000 by insured for improper deduction of settlement disbursements to class members was not a "loss" under excess professional liability policy); *In re TransTexas Gas Corp.,* 597 F.3d 298, 310 (5th Cir. 2010) (no coverage - an 'insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return.") (quoting *Level 3*, 272 F.3d at 910).

All of the cases explain that damages that are restitutionary in nature are never covered. Because of the financial services industry, not surprisingly, much of the authority is found under New York law. *See also Admiral Ins. Co. v. Weitz & Luxenberg, P.C.,* No. 02 Civ. 2195, 2002 WL 31409450, at *5 (S.D.N.Y. Oct. 24, 2002) ("New York law recognizes that the word "[d]amages" does not include a claim for restitution of money that was wrongfully obtained by an insured.") (citing *Hatfield v. 96-100 Prince St.,* 94 Civ. 3917, 1997 WL 151502, at *2 (S.D.N.Y. April 1, 1997) ("Under New York public policy, one may not insure against the risk of being ordered to return funds that have been wrongfully acquired; such awards are not 'damages' within the purview of insurance policies."). Restitution is akin to a criminal sanction with a goal of deterrence. *See supra*, n.2. Public policy is clear that restitution is not insurable because it would essentially embolden insureds to steal or embezzle and then pass the buck to their insurers.

Under Florida law, in *CNL Hotels,* the Eleventh Circuit rejected any suggestion that restitutionary-type damages can be an insurable "loss." In that case, the insured raised capital

for a merger by selling shares to the public at $20 a share.  Later, the insured learned that the shares were worth only $12.  Class action lawsuits were filed against the insured for the difference between the actual value of the shares and the price paid, which they claimed were based on a misleading proxy statement.  The insured settled both lawsuits and agreed to pay $35 million to the class, and $5.5 million in attorney's fees.  The insured sought reimbursement of the settlement under its primary and excess D&O policies, including a Twin City D&O policy.

On appeal, the Eleventh Circuit affirmed the district court's ruling that the settlement payment to the class was not a "loss."  The Eleventh Circuit reasoned that the settlement payment was essentially "**restoration of ill-gotten gain**," and accordingly, **uninsurable as a matter of law**. *Id.* at 223.  The Eleventh Circuit rejected plaintiff's argument that the underlying complaint did not allege fraud, therefore there was no proof of ill-gotten gains.  "This argument misunderstands the idea of restitution." *Id.*  The point is that the insured acquired money "in violation of that law," and that is not insurable.[3]

*Level 3 Commc'n Inc. v. Fed. Ins. Co.*, which was quoted by the Eleventh Circuit and is considered by many to be the seminal decision in the country, is instructive.  In *Level 3*, the insured was sued for securities fraud.  The underlying plaintiffs alleged that Level 3 obtained their company through false pretenses, and sued to recover the monetary value of their shares.  A settlement was reached, but the insurer refused to pay on grounds that the settlement was not a "loss" within the meaning of the D&O policy.  The Seventh Circuit agreed that the settlement was not a "loss" because the relief sought against the insured was restitutionary in nature, and coverage for disgorgement is against public policy.  The court reasoned that **"loss"** does not include the **"restoration of ill-gotten gain."** *Id.* at 910. **The damages were "restitutionary in**

---

[3] The insured even tried to shield the settlement by building into the agreement that it was not restitution or disgorgement, but the Eleventh Circuit saw through those efforts for what it was.

**character**. All that the plaintiffs in the underlying suit obtained was the amount they received in settlement of their claim against Level 3, and that amount was part of Level 3's gain from its officers' misbehavior."[4]

Applied here, the rationale in *CNL Hotels* and *Level 3* is even more compelling.[5]  In this case, the jury not only found that Datanet and CLEC acquired CRT's systems and that they were not entitled to those systems and had no mitigating arguments to the contrary.  The facts here are far more egregious than *Level 3* and *CNL Hotels* because the jury specifically found that Datanet and CLEC acted with "criminal intent."  The Final Judgment required Datanet and CLEC to pay CRT the value of the property they ***stole***, plus statutory treble damages.  Just like the settlement in *Level 3* was "restitutionary in character," the civil theft judgment here is undeniably restitutionary.  Plain and simple, Datanet and CLEC did not sustain a "loss" as defined by the Twin City D&O Policy.[6]  As Judge Posner cogently put it, "**[y]ou can't, at least for insurance purposes, sustain a 'loss' of something you don't (or shouldn't) have**." *Ryerson Inc.,* 676 F. 3d at, 612.

Any other conclusion in this case would require the Court to essentially reverse *CNL Hotels* and the overwhelming case law in New York and across the country.  And, a finding that

---

[4] Although indemnity claims for millions of dollars in restitution were at issue in *CNL Hotels & Resorts* and *Level 3,* both opinions are under 4 pages.  The brevity of the courts' rulings emphasize the established principle that restitution is not a covered loss—ever.

[5] Under Rule 201(b) of the Fed. R. Evidence, the Court may take judicial notice of the opinions in *CNL Hotels & Resorts* and *Level 3*, and the pertinent briefs.

[6] Additionally, intentionally stealing CRT's systems does not constitute a "wrongful act" under Coverage C of the Twin City Policy. "Wrongful act" is defined as, "any actual or alleged (1) error, misstatement, misleading statement, act, omission, neglect or breach of duty…." (*Twin City Policy,* Form PE 00 H013 00 0502, pg. 3/7.) *See Waste Corp. of Am., Inc. v. Genesis Ins. Co.,* 382 F. Supp. 2d 1349, 1357-58 (S.D. Fla. 2005) (holding that breach of contract was not a "wrongful act" defined by the policy as "any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty by the Directors or Officers....").

theft is an insurable "loss" would effectively stick Twin City with the tab for the theft of CRT's systems.  This of course is completely contrary to Florida and New York public policy.  *See, e.g., Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 549 So. 2d 1005, 1009 (Fla. 1989) ("[W]e hold that the public policy of Florida prohibits an insured from being indemnified for a loss resulting from an intentional act of religious discrimination."); *Lindheimer v. St. Paul Fire & Marine Ins. Co.,* 643 So. 2d 636, 639 (Fla. 3d DCA 1994) ("[D]enying coverage to Dr. Joseph supports the public policy that one should not be able to insure against one's own intentional misconduct."); *New Hampshire Indem. Co. v. Scott,* 910 F. Supp. 2d 1341, 1349 (public policy precludes coverage for insured's intentional misconduct); *see also Mortenson v. Nat'l Union Fire Ins. Co., P.A.,* 249 F.3d 667, 671 (7th Cir. 2001) ("For obvious reasons, insurance companies try to avoid insuring people against risks that having insurance makes far more likely to occur. The temptation that insurance gives the insured to commit the very act insured against is called by students of insurance 'moral hazard' and is the reason that fire insurance companies refuse to insure property for more than it is worth-they don't want to tempt the owner to burn it down.").

Last, the treble damages under Fla. Stat. §772.11 for civil theft against Datanet and CLEC are expressly outside the Twin City Policy's definition of "loss."  Under the Twin City Policy, "loss" specifically does not include "the multiple portion of any multiplied damage award." (*Twin City Polic*y, pg. 3/7.)  As a matter of law, the civil theft judgment is outside the scope of the insuring agreement of Coverage C of the Twin City Policy, and Twin City is entitled to summary final judgment. *See, e.g., County Manors Ass'n, Inc. v. Master Antenna,* 534 So. 2d 1187, 1195 (Fla. 4th DCA 1988) (reversing trial court and holding that treble damages "are fines or penalties imposed by law or matters which may be deemed uninsurable under the law," and thus not covered under D&O policy) (citing *Rosen v. Marlin,* 486 So. 2d 623, 625 (Fla. 3d

DCA)); *McArthur Dairy, Inc. v. Original Kielbs, Inc.,* 481 So. 2d 535, 539-40 (Fla. 3d DCA 1986).  Twin City should not be forced to pay the Final Judgment.[7]

## II.   BEYOND THE INSURING AGREEMENT, THE CIVIL THEFT JUDGMENT IS BARRED BY THE CRIMINAL ACT OR WILLFUL VIOLATION EXCLUSION

Florida courts, including the Florida Supreme Court, sensibly and willingly uphold criminal act or willful violation exclusions, "premised on the jurisprudential maxim that no person should be allowed to profit from his or her own wrong." *Hrymkiw v. Allstate Floridian Ins. Co.,* 844 So. 2d 739, 742 (Fla. 2003).  Here, in addition to the civil theft judgment not being a covered "loss," it is further specifically barred by the criminal act or willful violation exclusion under the Twin City Policy.  The criminal act or willful violation exclusion provides:

The Insurer shall not pay **Loss** for any Claim:

(L)   based upon, **arising from, or in any way related** to any deliberately **fraudulent or criminal act** or omission or any **willful violation of law** by the **Insureds if a judgment or other final adjudication establishes such an act, omission, or violation**.

(Form PE 31 H058 00 0804, pg. 3/7, Sec. IV, B.)  Jury instruction No. 35 went so far to request a finding of a "**violation of F.S. 812.014** (Theft)" by Datanet and CLEC.  Based on the evidence at trial, the jury conclusively found that Datanet and CLEC acted with *felonious intent* to steal CRT's property, in violation of § 812.014:

▪   Datanet appropriated CRT's property for its own use, and refused to return the property, **with criminal intent**, that is, with the intent to either temporarily or permanently deprive or CRT of its property, or to appropriate the property for its own use;

▪   CLEC appropriated CRT's property for its own use, and refused to return the property, **with criminal intent**, that is, with the intent to either temporarily or permanently deprive or CRT of its property, or to appropriate the property for its own use.

---

[7] If the Court finds that there is no coverage under the Twin City insuring agreement, it need not reach any of the exclusions discussed in the remaining sections of this motion.

(Ex. F.)  These findings place the civil theft final judgment squarely within the criminal act or willful violation exclusion.  Consequently, Twin City owes no coverage for the Final Judgment since it specifically "arises out of" a "criminal act" or "willful violation of law." *See, e.g., Certain Interested Underwriters at Lloyd's v. AXA Equitable Life,* No. 10-62061-CV, 2014 WL 3384699, at *2 (S.D. Fla. July 10, 2014) (holding that criminal conduct exclusion of E&O policy relieved insurer of duty to indemnify insured for insurance fraud lawsuits against him alleging misrepresentations, and based on guilty plea as well); *Illinois Union Ins. Co. v. Cliff Berry, Inc.,* No. 06-20951-Civ, 2006 WL 3667230, at *8 n.6 (S.D. Fla. Nov. 17, 2006) (interpreting D&O policy and noting that if insureds are adjudged guilty of the underlying criminal action, the criminal act exclusion "would be activated. Because it excludes any payments *in connection* to a criminal act as determined by a final judgment… .") (Italics in original); *Tartaglia v. Home Ins. Co.,* 240 A.D. 2d 396, 397-98 (N.Y. App. Div. 1997) (applying criminal and wrongful act exclusion of PL policy and holding insurer is not obligated to indemnify, "where the only theory of liability requires proof of intentional wrongdoing encompassed by the exclusion… ."); *Davis v. Home Ins. Co.,* No. 95 Civ. 0094, 1995 WL 380133, at *2 (S.D. Fla. June 26, 1995) (criminal and wrongful act exclusion applied to complaint against insured for embezzlement, scheme to defraud fund money, bribery, etc., relieving insurer of duty to indemnify); *Fed. Ins. Co. v. Safenet, Inc.,* 817 F. Supp. 2d 290 (S.D.N.Y. 2011) (criminal act exclusion of D&O policy applied to SEC complaint for securities fraud, guilty plea and adverse judgment); *Gulf Underwriters Ins. Co. v. KSI Serv., Inc.,* 233 Fed. Appx. 239, 241 (4th Cir. 2007) (affirming district court's ruling that criminal act exclusion of E&O policy applied to complaint against insured where cause of loss was insured's employee's criminal acts).  Twin City owes no coverage as a matter of law.

III.  **THE D&O POLICY'S GAIN OF PROFIT OR ADVANTAGE EXCLUSION ALSO BARS COVERAGE**

The civil theft judgment is also barred by the gain of profit or advantage exclusion. It specifically provides:

> The Insurer shall not pay **Loss** for any **Claim**:
>
> **(K)**    based upon, arising from, or in any way related to the **gaining, in fact, of any personal profit, remuneration or advantage to which the Insureds are not legally entitled** [if a judgment or other final adjudication establishes that such a gain did occur];[8]

(Ex. H, Form PE H013 00 0502, at pg. 5/7.)  The phrase "not legally entitled" has been defined as, "an advantage or profit resulting from [an insured's] violation of law if he could be required to return such profit." *Jarvis Christian College v. Nat'l Union Fire Ins.,* 197 F.3d 742, 747 (5th Cir. 1999).

In the Underlying Action, Jury Instruction No. 33 requested a finding that Datanet and CLEC "*unlawfully obtained and retained* [CRT's] property which caused [CRT] harm." (Ex. E.)  By stealing CRT's systems, Datanet and CLEC gained a profit or advantage, which they were not legally entitled to receive.  The jury's verdict proves the point:

> 5.    Did [Datanet] … **appropriate** [CRT's] property **for its own use** …?
> YES    **X** …
>
> 12.    Did [CLEC] … **appropriate** [CRT's] property **for its own use** …?
> YES    **X**

(Ex. E.)  The civil theft judgment awards restitution to CRT, arising out of Datanet's and CLEC's illegal retention of the systems, thus triggering this exclusion.  Twin City owes no coverage as a matter of law.  Again, the controlling authority is staggering. *See, e.g., Serio v. Nat'l Union Fire Ins. Co. of Pittsburg, PA,* 18 A.D. 3d 319, 320 (New York App. Div. 2005) (D&O insurer not obligated to indemnify insured for judgment finding that he made personal use

---

[8] Edits in brackets are pursuant to Form PE 31 H114 01 0607.

of defunct insurer's funds based on gain of profit or advantage exclusion); *Associated Cmty. v. St. Paul Mercury Ins.,* 118 A.D. 3d 608 (N.Y. App. Div. 2014) (gain of profit or advantage exclusion barred coverage for lawsuit against insured by investors harmed in Madoff Ponzi scheme, since complaint alleged that bank used funds to pay its fees, thus receiving a profit or advantage that it was not entitled to); *Bistricer v. Fed. Ins. Co.,* No. 02-Civ.5366, 2003 WL 22251290, at *3 (S.D.N.Y. Sept. 30, 2003) (gain of profit or advantage exclusion barred coverage for claims against insured, alleging diversion of $3 million of inventory and account for their own benefit); *Steadfast Ins. Co. v. Stroock & Stroock & Lavan, LLP,* 108 Fed. Appx. 663, 666 (2d Cir. 2004) (affirming district court's order that wrongful gain of profit or advantage exclusion precluded indemnity of bankruptcy judgment against firm that participated in a scheme to help divert assets from failing company); *Am. Auto. Ins. Co. v. Advest, Inc.,* No. 08Civ6488, 2009 WL 3490060, at *4 (S.D.N.Y. Oct. 28, 2009) (wrongful gain of profit or advantage exclusion precluded coverage for settlement of lawsuit against insured, alleging insured earned money from fraudulent trades placed by employee).  Even courts from other jurisdictions apply gain of profit or advantage exclusions in the same manner. *See, e.g., TIG v. Pinkmoney.com,* 375 F.3d 365, 370 (5th Cir. 2004) (gain of profit or advantage exclusion bared coverage for insured's CEO's conviction for statutory stock fraud, which required a finding that he <u>benefitted</u> from a false representation or promise, and the remedy was rescission); *Nat'l Union Fire v. U.S. Bank Nat'l,* No. 4:07-cv-1958, 2008 WL 2405975, at *6 (S.D. Tex. June 11, 2008) (gain of profit or advantage exclusion barred coverage for Bankruptcy Court's judgment against insured's CEO, which concluded that severance payment to CEO was obtained by insider status, and exceeded allowable amount as unsecured creditor); *Plainview Milk Prod. Coop. v. Westport Ins. Corp.,* 182 F. Supp. 2d 852, 854 (D. Minn. 2001) (applying gain of profit or advantage exclusion to

settlement agreement where insured agreed to refund over payments to customer).[9]  As a matter of law, Twin City is entitled to summary judgment.

## IV.   THE CIVIL THEFT JUDGMENT AROSE OUT OF A CONTRACTUAL RELATIONSHIP; ACCORDINGLY, NO COVERAGE IS OWED UNDER THE BREACH OF CONTRACT EXCLUSION

The Twin City Policy contract exclusion could not be any broader.  It precludes coverage for losses "arising out of based upon, or arising from, or in any way related to any" any contract. The exclusion specifically provides:

> **(A)**     The Insurer shall not pay **Loss** under Insuring Agreement **(C)** for any **Claim:**
>
> > **(1)**     **based upon**, or **arising from, or in any way related to** any **liability under any contract or agreement**, provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement; …

(Ex. H, Form PE 00 H013 00 0502, pg. 5/7.)  The civil theft count of CRT's second amended complaint incorporates by reference Paragraphs 1-48, which detail the genesis of the contractual relationship with Datanet, the exaggerated invoices from Datanet and CLEC, and Datanet and CLEC's refusal to return the property.  The jury verdict specifically found that Datanet breached the rental agreement for the systems:

> 1.     Was there a breach of contract on the part of [Datanet] which was a legal cause of damages to [CRT]?
> > YES     **X** …

In other words, the facts are undisputed.  It was because of the contractual relationship that Datanet and CLEC came into possession of the systems and had any opportunity not to return them after there was a dispute over invoices and money owed by CRT.  The civil theft judgment clearly is "**based upon**, or **arising from, or in any way related to** any **liability under**" the rental agreement contract with Datanet and its wholly owned subsidiary, CLEC. (*Civil Theft*

---

[9] The court also held that the exclusion applied whether the insured is a natural person or corporate entity. *Id.* at 855.

*Second Am. Comp.*, ¶8 "… pursuant to the Agreement between CRT and [Datanet] in which the parties agreed and accepted the exclusive jurisdiction of the courts of Florida and consented to the State of Florida as the forum for any claim brought under the Agreement"; ¶18 "[CLEC] is subject to the jurisdiction of the State of Florida pursuant to the Agreement between CRT and [Datanet]….)  In other words, CRT needed the contract to even sue in Florida under Florida law.

Recently, the Middle District of Florida confirmed that a breach of contract exclusion under a D&O policy bars coverage not only for actual breach of contract, but also other claims arising out of a breach of contract.  In *Bond Safeguard Ins. Co. v. Nat'l Union Fire,* No. 6:13-cv-561-Orl-37, 2014 WL 5325728 (M.D. Fla. Oct. 20, 2014), the district court held that the critical "arising out of" language in the breach of contract exclusion was broad enough to "preclude coverage for purported tort claims that depend on the existence of actual or alleged contractual liability of an insured "under any express contract or agreement.'" *Id.* at *7. *See also HC Waterford Prop., LLC v. Mt. Hawley Ins. Co.,* No. 08-22158-civ, 2010 WL 49149, at *6-7 (S.D. Fla. Jan. 7 2010) (adopting Magistrate's report and recommendation granting summary judgment in favor of insurer based on breach of contract exclusion, which applied to negligence claim).

Courts from other jurisdiction have similarly denied coverage under breach of contract exclusions for tort claims arising out of contracts. *See, e.g., Spiritas Co. v. Fed. Ins. Co.,* 521 F.3d 833, 835 (8th Cir. 2008) (affirming order applying breach of contract exclusion of D&O policy to tort claims against insured, flowing from a contract); *Julio & Sons Co. v. Travelers Cas. & Surety Co. of Am.,* 591 F. Supp. 2d 651, 663-64 (S.D.N.Y. 2008) (applying breach of contract exclusion of fraud and negligent misrepresentation claims against insured because breach of duties arose out of express agreement).  This Court should follow *Bond Safeguard Ins. Co.*  Twin City owes no coverage as a matter of law.

## V.     THE CRIME COVERAGE PART DOES NOT INSURE DATANET AND CLEC FOR STEALING SOMEONE ELSE'S PROPERTY

"It is basic law that when parties are *in particeps criminis,* there is to be no indemnification for a culpable party." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 595 N.Y.S. 2d 999, 1010 (N.Y. 1993) (citations omitted).    Based on this fundamental (sacred) principle, a crime insurance policy reimburses an employer when its employees steal from the employer.  ***A crime policy does not indemnify an insured for stealing from others****. See, e.g., Guyan Int'l, Inc. v. Prof'l Benefits Adm'r, Inc.,* No. 5:10cv823, 2013 WL 1338194, at \*27 n.29 (N.D. Ohio Mar. 29, 2013) ("[C]ommercial crime policies were not designed to protect corporations from their own dishonest acts.") (citing *Lutz v. St. Paul Fire & Marine Ins. Co.,* No. 1:03-cv-750, 2005 WL 2372871, at \*4 (S.D. Ohio Sept. 26, 2005) (crime policy also included exclusion for dishonest acts of the named insured)); *Fireman's Fund Ins. Co. v. Special Olympics Int'l, Inc.,* 249 F. Supp. 2d 19 (D. Mass. Jan. 24, 2003) ("Under a fidelity crime bond, loss means the deprivation or dispossession of money or property <u>of the insured</u> due to the dishonest, criminal or fraudulent acts of the insured's employees… The "paradigmatic example" of such a direct loss is an employee of the insured who embezzles money <u>directly from the insured</u>."); *Drexel Burnham Lambert Group, Inc.*, 595 N.Y.S. 2d at 1009-10 (N.Y. 1993) ("Much of what Drexel seeks recovery for is indemnification for the claims of third persons who may have suffered as a result of the activities of Drexel and its employees.  However, as previously pointed out, the policies covered only direct loss to the insured and excluded loss attributable to consequential damages."); *Finkel v. St. Paul Fire & Marine Ins. Co.,* No. 3:00CV1194, 2002 WL 1359672, at \*4 (D. Conn. June 6, 2002) ("Fidelity policies with language such as the EDR[10] here are a form of first party coverage, indemnifying the obligee for its loss and are not a form of

---

[10] Employee Dishonest Protection Rider to a fidelity insurance policy.

third party coverage, indemnifying the insured for its liability to third persons.").[11]

Here, the crime coverage part essentially reimburses Datanet and CLEC for "direct loss of or damage to … property that results directly from theft by an employee...." (*See* Ex. H.)[12] The Twin City Policy does not cover loss resulting from "***theft … or criminal acts committed by the* Insured**…." Twin City owes no coverage for the theft by Datanet and CLEC of CRT's property, and CRT has no legal or factual basis to argue that it is itself a Twin City's insured.

## VI.    **CRT'S AFFIRMATIVE DEFENSES AGAINST TWIN CITY ARE FRIVOLOUS**

In its answer, CRT was not able to conjure a single argument that the civil theft judgment, which was committed with criminal intent and is obviously restitutionary in nature, falls within the insuring agreement of Coverage C of the Twin City Policy.  Instead, CRT raised five generic affirmative defenses: waiver (as to denial of coverage and allocation of damages); estoppel (as to denial of coverage and allocation of damages), and laches. (DE 27.)

---

[11] Explained as simply as possible, the theft coverage under a basic auto insurance policy pays if someone steals the policyholder's car.  It seems too obvious to have to explain but that same policy does not provide coverage if the insured steals someone else's car.  Essentially, that is what CRT is asking the Court to find here.

[12] In its counterclaim for declaratory relief (Ex. D, DE 27, pg. 10), CRT alleges that it is an "additional insured" under the Twin City Policy under a certificate of insurance dated **09/15/04**, over which it was sanctioned CRT (DE 67), and which it never even mentioned in its Rule 26 Disclosures (DE 31). (*Composite CRT's Ans. to Interrogatories, with attached certificate of insurance,* Ex. K.) Regardless, the certificate of insurance is irrelevant.  On its face, it has absolutely nothing to do with the Twin City Policy, which was issued ***two and a half years later***. The Twin City Policy is not even listed in the certificate, and the policies that are listed are of a different type and for a different policy period: 07/01/04 through 07/01/05. CRT's "additional insured" argument has no factual basis whatsoever. (*Declaration of David Benfield,* Ex. I).  Even putting that aside, it is undisputed that CRT failed to comply with any of the Notice of Loss provisions, which are conditions precedent to coverage. (Ex. H, Form PE 00 H118 01 0904, pg. 9, Sec. H.)  The notice of loss requires that notice be given "as soon as possible **but not later than 90 days after discovery of loss**."  CRT first made a demand under the Crime Coverage Part in this litigation, in May 2014, which is approximately five years too late. Similarly, there is a **120-day deadline** for a proof of loss, which also passed nearly five years ago. (*Declaration of David Benfield,* Ex. I)

Waiver and estoppel may not be used to create coverage, beyond the terms upon which the parties agreed.  This is the law in New York and Florida. *See, e.g., Commercial Union Ins. v. Int'l. Flavors,* 822 F.2d 267, 274 (2d Cir. 1987) (estoppel may not be used to extend the scope of coverage); *Steadfast Ins. Co. v. Stroock & Stroock,* 277 F. Supp. 2d 245, 255, n.18 (S.D.N.Y. 2003) (equitable estoppel may not be used to create coverage);  *AIU Ins. Co. v. Block Marina Inv., Inc.,* 544 So. 2d 998, 1000 (Fla. 1989) (estoppel may not be used to create or extend coverage); *Sharp General Contractors, Inc. v. Mt. Hawley Ins. Co.,* 604 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009) (estoppel may not be used to create coverage); *Ward v. County of Allegany,* 34 A.D. 3d 1288, 1290 (N.Y. S. Ct. 2006) ("[W]here the issue is the existence or nonexistence of coverage …, the doctrine of waiver is simply inapplicable."); *Albert J. Schiff Assoc., Inc. v. Flack,* 417 N.E. 2d 84, 87 (N.Y. 1980) ("[W]here the issue is the existence or nonexistence of coverage, the doctrine of waiver is simply inapplicable."); *Aetna Cas. & Sur. Co. of Am. v. Deluxe Sys. of Fla.,* 711 So. 2d 1293, 1295-96 (Fla. 4th DCA 1998) (coverage cannot be created by waiver); *Mid-continent Cas. Co. v. Basdeo,* 742 F. Supp. 2d 1293, 1328 (S.D. Fla. 2010) (noting that waiver may not be used to expand coverage; only to prevent forfeiture of coverage). The same principle applies to the obscure laches defense. *Walton v. Lumberman's Mut. Cas. Co.,* 618 N.Y.2d 735, 737 (N.Y. 1994) ("In turning to plaintiff's second claim, that defendant's delay in denying first party benefits constituted laches, the Court notes that … the failure to disclaim coverage does not create coverage which the policy was not written to provide.").

Recently, Chief Judge Moore summarily rejected a similar strategy to manufacture coverage under a New York policy.  In *James River Ins. Co. v. Med Waste Mgmt., LLC, et. al.,* No. 1:13-cv-23608 (S.D. Fla. Sept. 22, 2014), exactly like what CRT is trying here, the claimant-judgment creditor tested every argument imaginable to avoid the terms of the insurance contract.

Among others, the claimant argued waiver, estoppel, and "mend the hold" under New York law to suggest that the insurer owed coverage despite the terms of the policy.   Judge Moore categorically dismissed the arguments as "not warrant[ing] analysis." (*Id.* at 9.)[13]  Exactly like in that case, CRT's affirmative defenses do not warrant any exhaustive analysis.

## VII.   THE CIVIL THEFT JUDGMENT IS ALSO OUTSIDE THE SCOPE OF THE INSURING AGREEMENT OF THE HARTFORD FIRE GL POLICY

The Commercial General Liability coverage form of the Hartford Fire GL Policy provides coverage for "property damage" caused by an "occurrence" subject to certain exclusions. (*Hartford GL Policy,* Ex. J, Form HG 00 01 10 01, pg. 1/16, Sec. I 1. b. (1)) "Property damage" is in turn defined as "***physical injury to tangible property***" and "resulting loss of use." (*Id.,* pg. 16/16.)  "Occurrence" is defined as an "***accident***, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at pg. 16/16.) The term "accident" is not defined, but the Florida Supreme court has defined it to mean ***unexpected or unintended acts and resulting damage***. *See, e.g., Dimmitt Chevrolet, Inc. v. Southeast Fid.,* 636 So. 2d 700, 704 (Fla. 1993); *State Farm Fire & Cas. Co. v. CTC Dev.,* 720 So. 2d 1072, 1076 (Fla. 1998) (an accident encompasses injuries or damages that are not expected or intended from the standpoint of the insured); *Travelers Indem. Co. v. PCR Inc.,* 889 So. 2d 779, 788-89 (Fla. 2004) (same).

Here, the Final Judgment for civil theft is not "property damage" under the threshold insuring agreement. Specifically, CRT's systems were not physically injured, they were stolen. The Final Judgment is also not an "occurrence."  The jury instructions, jury verdict, and the civil theft judgment all establish that Datanet and CLEC stole CRT's systems with ***criminal intent***.

---

[13] Under Rule 201(b) of the Fed. R. Evidence, the Court may take judicial notice of Judge Moore's rulings, and the pertinent briefs.

(*See* Ex. A, E, F.)  The jury specifically found that Datanet and CLEC did not lack the intent to commit civil theft based on advice of counsel; in other words, they had no defenses for stealing the property. (*See* Ex. F.)  Clearly, the theft of the systems was not an "accident,"                it was as the jury and the trial court determined, committed with ***felonious intent***.

Florida and New York courts interpreting GL policies consistently hold that in the absence of threshold "occurrence," there is no coverage. *See, e.g., Chestnut Assoc., Inc. v. Assurance Co. of Am.,* 17 F. Supp. 2d 1203 (M.D. Fla. 2014) (**no occurrence** – IED against pool cleaner sexually pleasing himself in customer's pool); *Geovera Specialty Ins. Co. v. Hutchins,* 831 F. Supp. 2d 1306, 1313 (M.D. Fla. 2011) (**no occurrence** – showing off gun and shooting); *Great Am. Assurance Co. v. Elliot,* 846 F. Supp. 2d 1258, 1264 (M.D. Fla. 2012) (**no occurrence** – intentionally dismembering mother's dead body, setting parts on fire and distributing remains on family farm was not an accident); *Barry Univ., Inc. v. Fireman's Fund Ins. Co.,* 845 So. 2d 276 (Fla. 3d DCA 2003) (**no occurrence** – intentional tort claims for fraud in the inducement, FDUTPA and breach of contract); *State Farm Fire & Cas. Co. v. Compupay, Inc.,* 654 So. 2d 944 (Fla. 3d DCA 1995) (**no occurrence** – claim for sexual harassment); *Draffen v. Allstate Ins. Co.,* 407 So. 2d 1063, 1065 (Fla. 2d DCA 1981) (**no occurrence** - shooting by the insured. "We agree with the trial court that one would simply have to take leave of one's senses to conclude . . . that this was an accident."); *New Hampshire Indem. Co. v. Scott,* 910 F. Supp. 2d 1341, 1347 (M.D. Fla. 2012) (applying Florida law and holding, "[o]nly a wholesale abandonment of the protocols of the English language would permit that transformation of the terms "accident" and "intentional."); *Hatmaker v. Liberty Mut. Fire Ins. Co.,* 308 F. Supp. 2d 1308, 1317 (M.D. Fla. 2004) ("**The Plaintiff's argument to the contrary – that an individual can negligently 'take' an object from another individual – is preposterous. The word 'take' insinuates intentional**

**conduct; a taker takes with the intent to take.**") (citations omitted); *Central Mut. Ins. Co. v. Willig,* No.1:13-cv-1134, 2014 WL 2927793, at *5 (N.D.N.Y. June 27, 2014) ("[B]ecause the conduct alleged in the Underlying Action was intentional, and not accidental… there was never an "occurrence" and coverage under the Policies was never triggered in the first instance."); *Swan Consultants, Inc. v. Travelers Prop,* 360 F. Supp. 2d 582, 589 S.D.N.Y. 2005) ("Injuries which flow directly and immediately from an intended act are not considered accidental."); Here, the civil theft judgment with findings of criminal intent does not satisfy the insuring agreement of the Hartford GL Policy.  Hartford Fire owes no coverage.

Finally, CRT's confusion that the Imputed Legal Liability Endorsement provides coverage is wrong. (Ex. D, pg. 15.)  This is not a situation of vicarious liability imputed to Datanet and CLEC.  The Endorsement merely provides that the Hartford GL Policy's definition of "occurrence" means an "accident" from the standpoint of the insured."  (Ex. J, Form HC 24 46 06 99.)  Here, there was no "accident" from the standpoint of Datanet or CLEC—they stole the systems.  The jury in the Underlying Action specifically found that Datanet and CLEC were both directly liable for stealing and misappropriating CRT's systems and both acted with **criminal intent** "that is, with the intent to either temporarily or permanently deprive CRT of its property, or to appropriate the property for their own use. (Ex. F.)[14]  As a matter of law, Hartford Fire is entitled to summary judgment in its favor.[15]

---

[14] CRT dismissed all of the individual defendants with prejudice and proceeded to verdict against only Datanet and CLEC.

[15] If the Court finds that the threshold insuring agreement is not satisfied, it need not address any of the exclusions addressed in this memorandum in the sections below.

## VIII.  CIVIL THEFT IS AN EXPECTED OR INTENDED INJURY AND EXPRESSLY BARRED UNDER THE HARTFORD FIRE GL POLICY

The authority in Florida and New York is overwhelming.  Stated simply, a GL policy's expected or intended injury exclusion applies if an insured acted with specific intent to injure. *See, e.g., Farmer v. Liberty Mut. Fire Ins. Co.,* No. 06-61477-CIV, 2007 WL 7698745 (S.D. Fla. July 18, 2007) (no duty to defend or indemnify based on allegations of intent to harm or cause bodily injury); *Cabezas ex rel. Ferrer v. Florida Farm Bureau,* 830 So. 2d 156, 158 (Fla. 3d DCA 2002) (no coverage under intentional acts exclusion of homeowner's policy based on allegations of intentional conduct by insured); *Prasad v. Allstate Ins. Co.,* 644 So. 2d 992 (Fla. 1994) (finding no coverage under intentional acts exclusion of homeowner's policy, when complaint alleged that plaintiff was repeatedly stabbed by insured's psychotic son); *Continental Cas. v. Schaubel,* 380 So. 2d 483, 484-85 (Fla. 3d DCA 1980) (reversing trial court and holding that pursuant to intentional acts exclusion, insurer was not obligated to defend insured in two separate lawsuits which alleged malicious intent to do damage to the plaintiffs); *Chestnut Assoc., Inc. v. Assur. Co. of Am.,* No. 8:13-cv-1755-T-7TBB, 2014 WL 1711579 (M.D. Fla. April 29, 2014) (intentional acts exclusion barred coverage for claim against insured by pool customer who discovered that pool technician sexually pleased himself in their pool); *Central Mut. Ins. Co.,* 2014 WL at *6 (no duty to indemnify insured where underlying complaint was replete with allegations of intentional conduct, expressly excluded by expected or intended injury exclusion) (citing *Silverman Neu, LLP v. Admiral Ins. Co.,* 933 F. Supp. 2d 463, 475-79 (E.D.N.Y. 2013) (holding that a wrongful act exclusion in an insurance policy was "stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case."); *Accessories Biz, Inc. v. Linda & Jay Keane*, 533 F. Supp. 2d 381, 386-87 (S.D.N.Y. 2008) (holding that insurance policy exclusion barred coverage where "the underlying

action … alleges only intentional acts on the part of the plaintiff.")); *Rosenberg Diamond Dev. Corp. v. Employers Ins. Co. of Wausau,* 144 Fed. Appx. 122 (2d Cir. 2005) ("Although Rosenberg argues otherwise, the ACORN complaint alleged *only* intentional racial discrimination. And, under New York law, it is clear that the type of language included in the CGL policy's "Coverage A" does not extend to such intentional discriminatory acts.") (italics in original).  The principle behind this exclusion "is premised on the jurisprudential maxim that no person should be allowed to profit from his or her own wrong." *Hrynkiw v. Allstate Floridian Ins. Co.,* 844 So. 2d 739, 742 (Fla. 5th DCA 2003).

Here, the Hartford Fire Policy contains a standard expected or intended injury exclusion that bars coverage for "property damage" expected or intended from the standpoint of the insured."  Even assuming "property damage" happened, Datanet and CLEC were found guilty of ***intentionally stealing*** CRT's system with criminal, felonious intent.  The jury also concluded that Datanet and CLEC intended to misappropriate the systems. (Ex. E, F.)  It is absurd to suggest that Datanet and CLEC "accidentally" stole the systems.  As a matter of law, Hartford Fire owes no coverage.

## IX.  THE CARE, CUSTODY OR CONTROL EXCLUSION ALSO APPLIES

All of the critical evidence in the Underlying Action establishes that CRT's systems were in the care, custody and control of Datanet and CLEC when the theft happened. (Ex. A, C, E, F.)  CRT specifically alleged that the systems were at Datanet's facilities and that Datanet  and CLEC were in "possession" of the systems and "refused" to return them, even throughout trial. (Ex. C, pg. 7 ¶31, 33, 35, 37, 38, 40-41, 44, 47, 68-70.)  These allegations trigger the care, custody or control exclusion under the Hartford GL Policy, which provides:

> This insurance does not apply to … "property damage" to (4) personal property in the care, custody or control of the insured.

(Ex. J, Form HG 00 01 10 01, pg. 4/16, j(4)).

Florida law applying the Care, Custody or Control Exclusion is dispositive. *See Hew Hampshire Ins. Co. v. Hill*, 516 Fed. App'x 803, 805-06 (11th Cir. 2013) (applying Florida law) (holding no duty to defend insured for claims of loss of use of recreational vehicles in the care, custody or control of the insured); *see also Omega Forensic Eng'g, Inc. v. RLI Ins. Co.*, 682 F. Supp. 2d 1336, 1342-43 (S.D. Fla. 2010) (policy's care, custody or control exclusion barred coverage for spoliation of evidence claim where hot water heater in possession and control of insured).  The exclusion has been consistently applied by courts across the country where an insured exercised possessory control over a third party's property. *See*, *e.g.*, *Essex Ins. Co. v. Wright*, 862 N.E.2d 1194, 1196-97 (Ill. Ct. App. 2007) (spoliation of evidence claim brought against insured automobile recycling company that destroyed an automobile that was to be used as evidence was excluded under commercial general liability policy's care, custody or control exclusion); *Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d 1112, 1127 (N.D. Cal. 2007) (allegations that insured converted two of plaintiff's vessels and sold the vessels without the owner's consent were excluded under policy's care, custody or control exclusion); *Pine Oak Centre, Ltd. v. Travelers Lloyds Ins. Co.*, No. 01-05-00530-CV, 2006 WL 853177, at *3-4 (Tx. Ct. App. Mar. 30, 2006) (claims against landlord that seized insured's personal property in accordance with a bankruptcy petition were excluded under policy's care, custody or control exclusion).

Florida law, much like these other jurisdictions, holds that the care, custody or control exclusion is applicable when the insured exercises "possessory control" over property. *See Phoenix of Hartford v. Holloway Corp.*, 268 So. 2d 195, 199 (Fla. 4th DCA 1972) (benchmark for application of care, custody or control exclusion is the exercise of possessory control over

personal property by insured); *Shankle v. VIP Lounge, Inc.*, 468 So. 2d 548, 549 (Fla. 5th DCA 1985) (under Florida law, care, custody or control exclusion envisions possessory control over the property, not proprietary control). "Possessory control" is established when the insured exercises physical control over the property, irrespective of any rights as the owner of the property. *Holloway*, 268 So. 2d at 199.

CRT unequivocally alleged and proved that it lost use of the systems because they were in Datanet's and CLEC's possession, custody and control. As a matter of law, Hartford is entitled to final summary judgment because it owes no coverage.

## **CONCLUSION**

The principles at stake in this action are basic, but nonetheless important. Datanet and CLEC were found liable for ***civil theft***, which they committed ***with criminal intent***. Under New York and Florida law, there is no insurance coverage available to pay for the judgment. Twin City and Hartford Fire are accordingly entitled to summary judgment.

Respectfully Submitted,

HINSHAW & CULBERTSON LLP

/s/SINA BAHADORAN
**SINA BAHADORAN**
Florida Bar No. 523364
sbahadoran@hinshawlaw.com
**MICHELE A. VARGAS**
Florida Bar No. 686395
mvargas@hinshawlaw.com
2525 Ponce de Leon Boulevard
4th Floor
Miami, Florida 33134
Telephone: (305) 358-7747
Facsimile: (305) 577-1063

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 22, 2014, I e-filed this document using the CM/ECF system.  I further certify that I am not aware of any non-CM/ECF participants.

<u>/s/MICHELE A. VARGAS</u>
**MICHELE A. VARGAS**