UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

TWIN CITY FIRE INSURANCE      CASE NO. 13-80998-CIV- Rosenberg/Brannon
COMPANY, a foreign corporation,

    Plaintiff,

vs

CR TECHNOLOGIES, INC.,
a Florida corporation,

    Defendant/Third Party Plaintiff

vs.

HARTFORD FIRE INSURANCE CO.,
a foreign corporation

    Third Party Defendant

_____

**DEFENDANT AND THIRD PARTY PLAINTIFF, CR TECHNOLOGIES, INC.'S, MEMORANDUM OF LAW IN OPPOSITION TO TWIN CITY FIRE INSURANCE COMPANY'S AND HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT**

COMES NOW, the Defendant and Third Party Plaintiff, CR TECHNOLOGIES, INC., by and through its undersigned attorneys, and hereby filed its Memorandum of Law in Opposition to Twin City Fire Insurance Company's and Hartford Fire Insurance Company's Motion for Final Summary Judgment, and states the following:

**I.     INTRODUCTION**

Twin City and Hartford Fire unjustifiably *pretend* throughout their Motion for Final Summary Judgment that the *sole* basis for their insureds' liability and resulting final judgment

1

was a claim for civil theft. Quite the contrary, the Second Amended Complaint pled counts for conversion, civil theft, tortious interference with business relations, violation of Florida's Deceptive and Unfair Trade Practices Act, and negligent misrepresentation against US Datanet and USD CLEC. (DE.1-3)

The jury found US Datanet and USD CLEC liable for conversion and civil theft and found US Datanet liable for breach of contract, violation of Florida's Unfair and Deceptive Trade Practices Act, and negligent misrepresentation. The same damages were sought and awarded for all counts - $141,551.20, exactly the replacement cost for the two sets of equipment rented to US Datanet and USD CLEC. (DE.1-4, p.3; DE.82-4) In entering final judgment, the trial court added interest and treble damages to the amount awarded by the jury. At an absolute minimum, then, Twin City and Hartford Fire must indemnify their insureds for that portion of the final judgment awarding the replacement cost of the equipment because it is a covered loss under the policies at issue.

Some of the arguments raised by Twin City and Hartford Fire's motion for final summary judgment have already been addressed in CRT's motion for final summary judgment. Specifically, Twin City argues the Crime Coverage Part does not insure US Datanet and USD CLEC for the subject loss [DE.84-1, pp.18-19]; this point was addressed in CRT's Motion for Summary Judgment. [DE. 82, pp.21-24] Twin City also argues CRT's affirmative defenses, including estoppel, are "frivolous." [DE.84-1, pp.19-21] CRT thoroughly addressed its estoppel affirmative defense in its motion for summary judgment. CRT will limit this response to those points which were not addressed in its own motion for summary judgment.

## II.   MEMORANDUM OF LAW

"The duty to indemnify is based upon the facts established at trial, and the possible application of any exclusionary clauses contained in the insurance agreement." Aetna Ins. Co. v. Waco Scaffold & Shoring Co., 370 So. 2d 1149, 1152 (Fla. 4th DCA 1978) (quoting Stevens v. Horne, 325 So. 2d 459, 461 (Fla. 4th DCA 1975)); Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001).

### A.   The Final Judgment Constitutes a "Loss" as Defined by the Twin City D&O Policy

In derogation of well-established legal principles regarding the construction of insurance policies, Twin City reads additional elements into the definition of "loss" which are simply not contained in the definition provided in the policy. Twin City asserts that the term "loss" requires the insured suffer "a fortuitous financial detriment of some kind." (DE.84-1, p.6) Twin City also provides its own self-serving characterization of the damages awarded by the jury in the underlying action when it likens those damages to "restitution." (Id.) The remainder of Twin City's argument that the final judgment is not a "loss" is based on these two self-serving propositions.

That Twin City is taking liberties with the policy definition of "loss" is even further borne out by reviewing the legal authority cited in support of its self-serving definition. For example, Twin City cites Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 64 F.3d 1282, 1286, n.8 (9th Cir. 1995) in support of its assertion, "the term 'loss' requires that the insured corporation suffer a fortuitous financial detriment of some kind, not to be rewarded for stealing." However, Safeway Stores merely states, "The plain meaning of the term 'loss' requires that Safeway suffer a financial detriment." In Safeway, the Court held a corporation's payment

of a dividend to its shareholders could not be considered a loss because "[t]he effect of a dividend is simply to transfer corporate profits from one part of the corporation to another, that is, from the purse of the corporate entity into the pockets of the corporation's owners, the shareholders." This reasoning supports neither Twin City's contention that a loss must be "fortuitous" nor its argument that no loss occurred in this case.

Furthermore, the policy's definition of loss expressly **<u>includes</u>** "punitive and exemplary damages where insurable by law." Such damages are insurable under Florida law when based on an insured's vicarious liability for the conduct giving rise to the damages. "Florida public policy does not preclude insurance coverage of punitive damages when the insured himself is not personally at fault, but is merely vicariously liable for another's wrong." <u>U.S. Concrete Pipe Co. v. Bould</u>, 437 So. 2d 1061, 1064 (Fla. 1983);  <u>Travelers Ins. Co. v. Wilson</u>, 261 So. 2d 545, 548 (Fla. 4th DCA 1972).

Because the policy's definition of "loss" expressly includes punitive or exemplary damages, it would make little sense to hold that the definition does not include restitutionary damages, as proposed by Twin City. Such an interpretation would mean that the D&O policy covers punitive or exemplary damages which are necessarily premised on willful or wanton conduct, but not damages which are in the nature of restitution. The policy would cover damages which are intended to punish an insured, but not damages which aim to deter an insured. There is no difference. The policy's clear and unambiguous definition of "loss" must control. That definition states nothing regarding damages which are "restitutionary" in nature.

Properly applying principles of insurance contract interpretation to the facts in the underlying action leads to but one conclusion – Twin City's insureds suffered a "loss" as that

4

term is defined in the subject policy. This point was made in CRT's motion for summary judgment, and will not be rehashed here.

At an absolute minimum, Twin City and Hartford Fire must indemnify their insured, US Datanet, for that portion of the final judgment which includes damages for US Datanet's negligent misrepresentation, as found by the jury. As discussed in CRT's motion for summary judgment, the jury found US Datanet liable for various torts and awarded a single amount of damages - $141,551.20. Twin City and Hartford Fire have a duty to indemnify, even if only for that portion of the final judgment which is covered by one or both of the policies.

> If a judgment includes elements for which an insurer is liable and also elements beyond the coverage of the policy, the burden of apportioning or allocating these damages is on the party seeking to recover from the insurer. On the other hand, if the evidence raises a question as to whether the entire claim is beyond the coverage of the policy, the burden is upon the insurer to show that there is no coverage. Non-insurability is a defensive matter, with the burden resting on the insurer.

U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061, 1065 (Fla. 1983); See Sanabria v. Am. Home Assur. Co., 113 A.D.2d 193, 197, 495 N.Y.S.2d 533, 536 (App. Div. 1985) reversed on other grounds, 68 N.Y.2d 866, 501 N.E.2d 24 (1986) ("Where an excess insurer is liable to indemnify in part, either because the amount of the judgment or settlement exceeds the limits of the primary policy *or because an apportioned part of such judgment or settlement is for claims which are excluded from the primary policy but are covered by the excess policy*, the excess insurer may be liable for a portion of the legal fees"); Ackerman v. S. Wood Piedmont Co., 409 F. Supp. 469, 473 (E.D.N.Y. 1976) (insurer had duty to indemnify at least as to portion of final judgment not covered by the workmen's compensation policy).

Twin City and Hartford Fire wholly neglect to address the fact that the jury awarded damages based on several theories of liability, including negligent misrepresentation. If nothing

else, Twin City and Hartford Fire must indemnify their insured US Datanet for $141,551.20, that portion of the final judgment which constitutes the jury's award of damages resulting from US Datanet's negligent misrepresentation to CRT.

> B. Exclusions Relied on by Twin City Do Not Relieve Twin City of Its Duty to Indemnify Its Insureds for the Final Judgment

Even assuming Twin City can properly rely on policy exclusions[1], the exclusions pointed to in support of its motion for final summary judgment do not wholly relieve Twin City of its duty to indemnify US Datanet and USD CLEC for the final judgment.

"An exclusion must be specific and clear, and will be narrowly construed and enforced only when the insurer establishes that the pertinent language is 'subject to no other reasonable interpretation'" Essex Ins. Co. v. Grande Stone Quarry, LLC, 82 A.D.3d 1326, 1327 (App. Div. 2011). "Under New York law, 'before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation.'" Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co., 2014 WL 1642906 (S.D.N.Y. Apr. 24, 2014) (quoting Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984)). Finally, "[i]f the language is ambiguous, the ambiguity will be construed in favor of the insured, and 'the test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech'" Essex Ins. Co., 82 A.D.3d at 1327

---

[1] By way of its First Affirmative Defense and its motion for final summary judgment, CRT has argued that Twin City should be estopped from relying on policy exclusions. [DE.82, pp.16-21] CRT will not reiterate herein every argument made in support of its estoppel defense. If this Court grants CRT's motion for summary judgment on the issue of estoppel, it need not consider any of the exclusions relied on by Twin City and Hartford Fire.

6

(quoting (Matter of Mostow v. State Farm Ins. Cos., 88 N.Y.2d 321, 326–327, 645 N.Y.S.2d 421, 668 N.E.2d 392 (1996)).

### 1. Criminal Act or Willful Violation Exclusion

Twin City posits there is no coverage under Exclusion (L) in Section IV of the policy, which provides that the Insurer shall not pay Loss for any Claim:

> (L) based upon, arising from, or in any way related to any deliberately fraudulent or criminal act or omission or any willful violation of law by the Insureds if a judgment or other final adjudication establishes such an act, omission, or violation.

In support of its assertion, Twin City once again mischaracterizes the final judgment as a "civil theft final judgment." [DE.84-1, pp.12-13] However, several of the causes of action which were proven by CRT in the underlying lawsuit and which supported the jury's verdict and award of damages do not involve a "deliberately fraudulent or criminal act" or a "willful violation of law."

For example, conversion does not require proof of intent: "[K]nowledge or intent is *not* a necessary element of a cause of action for conversion." Stearns v. Landmark First Nat. Bank of Fort Lauderdale, 498 So. 2d 1001, 1002 (Fla. 4th DCA 1986) (emphasis in original). Similarly, the cause of action for negligent misrepresentation does not involve conduct that rises to the level of a "deliberately fraudulent or criminal act or omission" or "a willful violation of the law." "In order to be actionable, a suit for negligent misrepresentation must contain the following elements: (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation." Wallerstein

v. Hosp. Corp. of Am., 573 So. 2d 9, 10 (Fla. 4th DCA 1990) (quoting Atlantic Nat'l Bank of Florida v. Vest, 480 So.2d 1328, 1331 (Fla. 2d DCA 1985)). Thus, this exclusion does not preclude coverage for that portion of the final judgment having nothing to do with civil theft – the jury's award of damages in the amount of $141,551.20.

### 2. Gain of Profit or Advantage Exclusion

In Count IV, Twin City relies on Exclusion (K) in Section IV of the Policy which applies to all insuring agreements. Exclusion (K) provides that the Insurer shall not pay Loss for any Claim:

> (K) based upon, arising from, or in any way related to the gaining, in fact, of any personal profit, remuneration or advantage to which the Insureds are not legally entitled [**if a judgment or other final adjudication establishes that such a gain did occur**]

Here, Twin City argues "[b]y stealing CRT's systems, Datanet and CLEC gained a profit or advantage, which they were not legally entitled to." (DE.84-1, p.14) Here, Twin City highlights just two of many findings by the jury, many of which focused on the negligent acts of US Datanet and its officers, including their negligence in misrepresenting their intentions to CRT. Furthermore, the claims made by CRT and the jury's verdict are not based on US Datanet "gaining, **in fact**" a "personal profit, remuneration or advantage." Indeed, the evidence at trial showed that US Datanet wrongfully deprived CRT of its equipment, but never used the equipment for its own purposes. Instead, US Datanet filed for Chapter 11 bankruptcy and the equipment was purchased by a different corporation in connection with the bankruptcy proceedings. (DE.79-1, pp.88-92, 95-97, 98-99) Furthermore, the damages awarded by the jury and included in the final judgment do not establish that US Datanet gained a personal profit, remuneration, or advantage by depriving CRT of the equipment. Instead, the verdict and final

8

judgment established that the acts of US Datanet caused CRT to suffer the loss of its property. These facts make the cases relied on by Twin City distinguishable and this exclusion inapplicable.

### 3. Breach of Contract Exclusion

Twin City next argues there is no coverage under Exclusion V.(A) which provides, in relevant part:

> (A) The Insurer shall not pay Loss under Insuring Agreement (C) for any Claim:
>
> (1) Based upon, arising from, or in any way related to any liability under any contract or agreement, **provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement.**

(D&O, p.5) (emphasis added)

Other than Count I for Breach of Contract, all of the claims pled in the Second Amended Complaint would have resulted in liability to US Datanet even in the absence of the Rental Agreement. All of CRT's other claims would have been actionable even if there was never a written agreement between CRT and US Datanet. Stated differently, liability for negligent misrepresentation[2], conversion[3], civil theft[4], tortious interference with advantageous business

---

[2] "In order to be actionable, a suit for negligent misrepresentation must contain the following elements: (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend that the representation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation." Wallerstein v. Hosp. Corp. of Am., 573 So. 2d 9, 10 (Fla. 4th DCA 1990) (quoting Atlantic Nat'l Bank of Florida v. Vest, 480 So.2d 1328, 1331 (Fla. 2d DCA 1985)).

[3] A conversion claim is based on a "positive, overt act or acts of dominion or authority over the money or property inconsistent with and adverse to the rights of the true owner." Columbia Bank v. Turbeville, 143 So. 3d 964, 969 (Fla. 1st DCA 2014).

[4] "In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent." Gersh v. Cofman, 769 So. 2d 407, 409 (Fla. 4th DCA 2000).

relationships[5], and violation of Florida's Deceptive and Unfair Trade Practices Act[6] would have been incurred by US Datanet even in the absence of the Rental Agreement. Thus, contrary to Twin City's assertion that CRT's entire claim arose out of the Rental Agreement with Datanet, most of the claims arose independent of the Rental Agreement – an important fact given the express language of the exclusion which must be narrowly construed in favor of coverage. Indeed, this language makes the policy and exclusion presently at issue distinguishable from those cases relied on by Twin City. None of the cases cited by Twin City in support of this argument involve exclusions having the qualifying language at issue here: "**provided that this exclusion shall not apply to the extent that liability would have been incurred in the absence of such contract or agreement.**" Based on the foregoing, the exclusion provided under V.(A) does not completely relieve Twin City of its duty to indemnify US Datanet and USD CLEC for the loss.

    C.  Coverage Under the Crime Coverage Part

For the most part, the argument made by Twin City regarding lack of coverage under the Crime Coverage Part of the policy has been addressed by CRT in its motion for summary judgment. CRT would simply make two points. First, "Insuring Agreement 1. – Employee Theft" provides coverage for "direct loss of or damage to Money, Securities, and Other Property that results directly from Theft by an Employee, whether or not identifiable, while acting alone or in collusion with other persons." (DE.1-6, p.35) In turn, the General Conditions of the Crime

---

[5] The elements of a claim for tortious interference with advantageous business relationships are "1) the existence of a business relationship under which the claimant has rights; 2) the defendant's knowledge of the relationship; 3) an intentional and unjustified interference with the relationship; 4) by a third party; and 5) damages to the claimant caused by the interference." Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc., 629 So. 2d 252, 255 (Fla. 3d DCA 1993)

[6] A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)

Coverage Part expressly provides that "the property covered under this Coverage Part is limited to Money, Securities, or Other Property (a) that the Insured owns or leases." (DE.1-6, p.44) It is undisputed that US Datanet leased the computer systems from CRT, and thus, that those systems were covered property under the Crime Coverage Part. US Datanet and USD CLEC employees committed a theft of the leased computer systems, which caused Twin City's insureds to become liable for resulting damages. These facts bring the underlying claim and final judgment firmly within the coverage provided by the Crime Policy.

> D. <u>Hartford Fire Owes a Duty to Indemnify Under the Commercial General Liability Policy</u>

CRT has outlined its position for coverage under the Commercial General Liability policy in its motion for summary judgment. (DE.82, pp.24-25) As such, CRT writes only to clarify some issues with Hartford Fire's position. Hartford Fire truncates the definition of "property damage" contained in the commercial general liability policy. (DE.84-1, p.21) The definition of "property damage" provides:

> "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(DE.78-1, p.109) The definition provided in paragraph (b) is implicated by the facts of the underlying action – the jury awarded damages to compensate CRT for its loss of use of the computer systems which loss of use resulted from the conduct of US Datanet and USD CLEC's agents/employees. Simply stated, the final judgment memorializing the jury's award of damages

11

is a "sum that the insured [has] become legally obligated to pay as damages because of 'bodily injury' or 'property damage'" as those terms are defined in the policy. The evidence at trial also demonstrated that the property damage arose from an "occurrence," defined as "[f]rom the standpoint of the insured, an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (DE.78-1, p.110) None of US Datanet's or USD CLEC's employees testified that they intended to wrongfully deprive CRT of its property. To the contrary, they kept CRT's computer systems because they mistakenly believed they were the property of US Datanet and USD CLEC. (DE.80-1, p.16)

### E. The Exclusions Relied on by Hartford Fire Do Not Relieve it of the Duty to Indemnify Under the Commercial General Liability Policy

In further support of its effort to avoid indemnification, Hartford Fire points to two policy exclusions: Expected or Intended Injury, and the Care, Custody, or Control Exclusion. Construing both exclusions narrowly, as this Court must, neither precludes coverage.

**1. Expected or Intended Injury Exclusion**

The Expected or Intended Injury Exclusion provides in its entirety:

This insurance does not apply to:

**a. Expected or Intended Injury**

> "Bodily Injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

(DE.78-1, p.95) As previously explained, the evidence at trial proved that US Datanet and USD CLEC employees were under the mistaken belief that US Datanet owned the subject equipment at the end of the rental agreement. This belief was based on advice of legal counsel.[7] Thus, US

---

[7] The jury's answer to inquiry number 6 on the verdict form does not refute this fact. That inquiry asked the jury whether US Datanet lacked the requisite intent because it sought the advice of a lawyer, gave the lawyer a full and

12

Datanet and USD CLEC did not intend or expect to cause property damage – loss of use of the computer systems – to CRT. Furthermore, Hartford Fire highlights just one of many findings made by the jury. The jury also found US Datanet liable for negligent misrepresentation. Here, the jury found US Datanet made a statement concerning a material fact that it believed to be true but was in fact false, that US Datanet was negligent in making the statement because it should have known the statement was false, that US Datanet intended CRT to rely on the statement, that CRT did rely on the statement, and that such reliance was the legal cause of damages to CRT. (DE.1-4, p.3) These findings sound in negligence resulting in damages to CRT, not an intentional or expected injury. Therefore, if this exclusion applies at all, it does not relieve Hartford Fire of its duty to indemnify US Datanet for the jury's award of damages for negligent misrepresentation.

### 2. Care, Custody or Control Exclusion

The Care, Custody or Control Exclusion provides that coverage is excluded for "'property damage' to …(4) personal property in the care, custody, or control of the insured." (DE.78-1, p.97) First, it is entirely unclear what the policy means by "personal property" as used in this exclusion. Exclusion (j) "Damage to Property" in which this exclusion appears, uses various terms to refer to property, none of which are defined: "property", "premises", "personal property", and "real property." This ambiguity makes it impossible to know whether the computer systems leased to US Datanet by CRT are "personal property" within the meaning of the exclusion relied on by Hartford Fire.

---

fair statement of what it knew, and relied on the lawyer's advice in its actions. (DE.1-4, p.2) The inquiry is made in the conjunctive, and the jury's response could be based on a determination that any one of the three elements was missing. Thus, this finding does not conclusively refute the evidence that US Datanet's employees were mistaken about US Datanet's right to the equipment.

In addition, Exclusion (j) later provides: "Paragraph (4) of this exclusion does not apply to 'property damage' to borrowed equipment while not being used to perform operations at the job site." Here again, the policy fails to define the key term "borrowed equipment." Construing this provision in favor of coverage, the exclusion does not apply under the facts of the underlying case because the loss of use occurred to equipment rented by Hartford Fire's insured while not being used to perform operations at a job site.

## III.  CONCLUSION

Based on the foregoing, CRT asks this Honorable Court to enter an order denying Twin City and Hartford Fire's motion for final summary judgment in its entirety. At a minimum, as outlined herein, this Court should deny that motion in part because Twin City and Hartford Fire have a duty to indemnify US Datanet for $141,551.20, the damages awarded for US Datanet's negligent misrepresentation.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2015, I e-filed this document using the CM/ECF system. I further certify that I am unaware of any non-CM/ECF participants.

/s/ Kevin Smith
Kevin C. Smith, Esquire of
Lytal, Reiter, Smith, Ivey & Fronrath, L.L.P.
515 N. Flagler Drive, Suite 1000
West Palm Beach, FL 33401
Phone: (561) 655-1990
Fax:    (561) 832-2932
Attorney for Plaintiff
Florida Bar # 861030